IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TEAMSTERS LOCAL UNION 705, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 10 C 7378 |
| ) | |
| BNSF RAILWAY COMPANY, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendants' motions to dismiss. For the reasons stated below, the motions are granted.

## BACKGROUND

Individual Plaintiffs in this action are members of Plaintiff Teamsters Union Local 705 (Local 705). Defendant Burlington Northern Santa Fe, LLC (Burlington LLC), Defendant Burlington Northern Santa Fe Corporation (Burlington Corp.), Defendant BNSF Railway Company (BNSF), Defendant Santa Fe Terminal Services, Inc. (Terminal), and Defendant Berkshire Hathaway, Inc. (Berkshire) allegedly operated the Corwith Inter-Modal Rail Yard (Corwith) in Chicago, Illinois. BNSF

1

allegedly retained Defendant Rail Terminal Services (RTS) to manage Corwith. BNSF was also assisted in the operation of Corwith by Defendant Rail Management Services (RMS) and Defendant Carrix, Inc. (Carrix).

Local 705 allegedly represented the RTS workers at Corwith prior to June 2010. In June 2010, BNSF allegedly covertly negotiated a proposed agreement concerning the pension, health, and welfare benefits of workers at Corwith with Defendant Transportation Communications International Union (TCU). BNSF then allegedly negotiated with Local 705 to determine whether BNSF could obtain benefit concessions from Local 705. BNSF then allegedly took steps to replace Local 705 with TCU at Corwith.

BNSF allegedly cancelled the contract with RTS at Corwith and in October 2010, RTS allegedly informed Local 705 that it was permanently discontinuing assistance in the operations at Corwith and that Local 705 would be terminated within a 14-day period commencing on December 31, 2010. Plaintiffs contend that the majority of workers represented by Local 705 will be terminated and that although some could re-apply for jobs at Corwith, they would forfeit certain benefits, including pension benefits. Plaintiffs contend that Defendants engaged in a deceptive scheme in order to interfere with the ability of the workers at Corwith to exercise their rights under the Employee Retirement Income Security Act (ERISA),

29 U.S.C. § 1001 *et seq.*, and to retaliate against workers for the exercise of their rights under ERISA.

Plaintiffs include in their amended complaint ERISA interference and retaliation claims (Count I), and a civil conspiracy claim (Count II). Defendants move to dismiss all claims.

## LEGAL STANDARD

In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) (Rule 12(b)(6)), a court must "accept as true all of the allegations contained in a complaint" and make reasonable inferences in favor of the plaintiff. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)(stating that the tenet is "inapplicable to legal conclusions"); *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). To defeat a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949 (internal quotations omitted)(quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint that contains factual allegations that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 129 S.Ct. at 1949 (internal quotations omitted).

## DISCUSSION

I.  Section 511 ERISA Claims

Defendants argue that the claims brought pursuant to Section 511 of ERISA are not applicable in the instant action.  Plaintiffs indicate in their amended complaint that they are bringing ERISA claims pursuant to Section 510 of ERISA (Section 510), 29 U.S.C. § 1140, and Section 511 of ERISA (Section 511),  29 U.S.C. § 1141.  (A. Compl. Par. 41).  As Defendants correctly point out, Section 511 imposes criminal penalties for certain ERISA violations.  29 U.S.C. § 1141.  Section 511 is thus not applicable in the instant action, and all claims based on Section 511 are dismissed.

II.  Corporate Parents and Affiliates

Plaintiffs have named as Defendants various parents and affiliates of BNSF and RTS such as Burlington Corp., Burlington LLC, Terminal, Berkshire, RMS, and Carrix.  In general, "a parent and a subsidiary are two separate entities and the acts of one cannot be attributed to the other." *Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 944 (7th Cir.

4

2000). In the instant action, Plaintiffs have failed to allege sufficient facts to indicate any direct involvement in the alleged wrongdoing by the above-listed parents or affiliates. Plaintiffs also argue that determining whether certain entities are parents or affiliates of other Defendants involves a consideration of materials outside of the pleadings. However, for several Defendants, Plaintiffs have provided such information in the amended complaint and, regardless of the corporate relationships of the above-named Defendants, Plaintiffs have not alleged sufficient facts concerning their specific involvement in the alleged wrongdoing. Therefore, based on the above, the motions to dismiss brought by the above-named Defendants are granted.

III. Section 510 Claims

Defendants move to dismiss the Section 510 claims brought against BNSF, RTS, and TCU. Section 510 provides in part the following:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act [29 U.S.C.A. § 301 et seq.], or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act. It shall be unlawful for any person to discharge, fine, suspend, expel, or discriminate against any person because he has given information or has testified or is about to testify in any inquiry or proceeding

relating to this chapter or the Welfare and Pension Plans Disclosure Act.

29 U.S.C. § 1140. Section 510 is not limited to claims involving an employer/employee relationship. *See, e.g., Feinberg v. RM Acquisition, LLC*, 629 F.3d 671, 675 (7th Cir. 2011).

A. Section 510 Claim Against TCU and BNSF

TCU and BNSF argue that it was RTS that allegedly employed the Individual Plaintiffs and thus neither TCU nor BNSF could have taken actions such as discharging or suspending Individual Plaintiffs as provided in Section 510. Plaintiffs allege in the amended complaint that Individual Plaintiffs were employed by RTS and that BNSF retained RTS to manage Corwith. (A. Compl. Par. 17-19, 27). Plaintiffs allege that RTS made the decision to terminate Individual Plaintiffs. (A. Compl. Par. 26-27). There are not sufficient allegations to indicate that TCU participated in any way in the decision by RTS to terminate the employment of Individual Plaintiffs. In regard to BNSF, Plaintiffs allege that BNSF had some control over RTS's operations at Corwith. (A. Compl. Par. 17-18). However, that is not sufficient to plausibly suggest that BNSF dictated to RTS what employees it would terminate or participated in the decision to terminate Individual Plaintiffs. As BNSF points out, RTS was free to reassign Individual Plaintiffs to other RTS

operations when BNSF cancelled RTS's contract at Corwith. Therefore, the motions to dismiss by TCU and BNSF as to the Section 510 claims are granted.

### B. Section 510 Claims Against RTS

Defendants argue that there are not sufficient allegations to indicate that RTS is liable under Section 510. Plaintiffs contend that BNSF "play[ed] [Local 705] off of [TCU] to see which Union would give more concessions." (Ans. 5, 14). However, Plaintiffs fail to explain how, even if true, such conduct violates ERISA.

Plaintiffs contend that BNSF ultimately was able to pay less for benefits for workers at Corwith. However, Plaintiffs do not allege facts that suggest that such a result, even if true, violated ERISA. As BNSF points out, under Plaintiffs' theory whenever an employer moves from a more expensive unionized workforce to a less expensive workforce, either by employing non-union workers or by creating a relationship with a different union, the employer would violate ERISA. Plaintiffs do not suggest that BNSF was unable contractually to cancel the contract with RTS at Corwith. Nor have Plaintiffs suggested that the cancellation of the contract with RTS violated any collective bargaining agreement entered into by Local 705. Plaintiffs must allege more than general statements that Defendants interfered with their ERISA rights. An action taken in accordance with the law that results in the

termination of certain ERISA benefits does not unlawfully interfere with ERISA rights and Plaintiffs have not alleged sufficient facts to suggest unlawful actions by Defendants. Although Plaintiffs point to one Ninth Circuit case that they contend is similar to this case, Plaintiffs have not cited any case in the Seventh Circuit which has held that circumstances such as those alleged in the instant action can support an ERISA claim. (Ans. 7-8). Nor is the instant action a case where an employer merely switched one contractor for another contractor in order to avoid ERISA obligations. The facts as alleged in the amended complaint reflect that BNSF changed its manner of operations by eliminating RTS as a contractor and deciding to operate Corwith in-house with Terminal. In addition, although Plaintiffs claim that Individual Plaintiffs have to "start from scratch," RTS could have assigned Individual Plaintiffs to new RTS positions and that fact that BNSF decided to operate Corwith itself does not mean that Plaintiffs' ERISA rights were somehow violated. (Ans. 8).

Plaintiffs also indicate in their answer that the "unlawful purpose" of the alleged scheme in this case violated labor laws because BNSF allegedly bargained with two separate unions covering the same class of members at the same time. (Ans. 14). Plaintiffs also argue that TCU entered into negotiations with BNSF even though it was "not the authorized representative of the workers at Corwith. . . ." (Ans. 15). However, Plaintiffs indicate in their amended complaint that they are

8

bringing ERISA claims in this case, not labor law claims. Plaintiffs have in fact specifically indicated in the amended complaint that they are not bringing claims for violations of labor laws. (A. Compl. Par. 37). Defendants cannot be expected to speculate as to the basis of Plaintiffs' claims and Plaintiffs have failed to provide sufficient facts to plausibly suggest a violation of Section 510 by RTS. In addition, Plaintiffs have not alleged facts to suggest that RTS acted with the requisite intent to unlawfully interfere with Plaintiffs' ERISA rights or retaliate for the exercise of such rights. Therefore, the motion to dismiss by RTS as to the Section 510 claim is granted.

IV. Conspiracy Claims

Defendants also move to dismiss the conspiracy claims arguing that Plaintiffs have not alleged sufficient allegations regarding the alleged conspiracy. Defendants also contend that Plaintiffs are impermissibly attempting to use a common law conspiracy claim to expand the scope of Section 510 beyond that intended by Congress.

A. Insufficient Facts For Conspiracy Claim

Defendants contend that Plaintiffs present only vague and conclusory

9

statements to support the conspiracy claims. Plaintiffs argue that they have set forth the general time period of the alleged conspiracy, the members in the conspiracy, and the general agreement underlying the conspiracy. However, contrary to Plaintiffs' contentions, the underlying agreement between the parties is not apparent based on the allegations in the amended complaint. Plaintiffs attempt to give an in-depth explanation of the conspiracy and the role of the various Defendants in their response to the motions to dismiss, but Plaintiffs cannot rewrite the amended complaint in their response. For example, Plaintiffs contend that RTS was a "sham" intermediary and that BNSF made all management decisions at Corwith including deciding who would be terminated by RTS. (Ans. 16). However, Plaintiffs failed to include such details in the amended complaint or even include facts that would suggest such conclusions. Plaintiffs merely allege that BNSF "had overall general management control and made decisions with regard to running Corwith," which was natural considering that Corwith was still BNSF's facility. (A Compl. Par.17- 18). However, the elaborations provided in Plaintiffs' response to the instant motions regarding control over RTS's operations such as personnel decisions are far and above what is alleged in the amended complaint. The scope and underlying facts of the alleged conspiracy can only be speculated by piecing together various facts from the amended complaint and filling in large gaps with supposition.

The court also notes that the allegations in the amended complaint contradict that supposed conspiracy as defined in Plaintiffs' response to the motion to dismiss. For example, although Plaintiffs contend that RTS was a conspirator and terminated Individual Plaintiffs, Plaintiffs have not offered any explanation of what benefit RTS would receive from such an arrangement where it lost its contract at Corwith and terminated employees. Plaintiffs also repeatedly contend that BNSF "play[ed]" the two unions against each other to get the best concessions, indicating that the unions are victims in this matter. (Ans. 5, 8, 14). However, Plaintiffs also contend that TCU, one of the supposed victims was a participant in the hidden conspiracy. Thus, the plausible inferences from Plaintiffs' own allegations contradict the elaborations provided in response to the motions to dismiss. Thus, Plaintiffs have not alleged sufficient facts to state a valid conspiracy claim.

B. Expansion of Section 510

Defendants argue that, even if Plaintiffs had alleged sufficient facts concerning a conspiracy, Plaintiffs cannot do so based on state or federal common law. ERISA has been held to "completely preempt[] state law on the subject of pension and welfare plans." *Whitely v. Moravec*, 635 F.3d 308, 310 (7th Cir. 2011). Plaintiffs cite Illinois state law in support of their conspiracy claim. (Ans. 14).

However, to the extent that Plaintiffs seek to bring a common law conspiracy claim, they cannot do so under Illinois law since the conduct upon which the alleged conspiracy claims are based is the same conduct upon which the Section 510 claims are based. To the extent that Plaintiffs could rely upon federal common law for a conspiracy claim, Plaintiffs fail to cite any court in the Seventh Circuit that has applied such federal common law in this ERISA context, and this court declines to expand the scope of Section 510 in such a manner in the instant action. Therefore, the motion to dismiss the conspiracy claims is granted.

V. Motion to Exclude

Plaintiffs have filed a motion to exclude the court from considering a contract entered into between BNSF and RTS (Contract). Plaintiffs contend that the Contract is outside of the four corners of the amended complaint and cannot be considered at the motion to dismiss stage. However, it was not necessary to take into consideration the Contract in order to resolve the motions to dismiss. For example, although BNSF refers to the Contract to show that the Individual Plaintiffs were employees of RTS, (BNSF Mem. 2), based on Plaintiffs' own allegations in the amended complaint, it is apparent that Individual Plaintiffs worked for RTS and RTS was contracted by BNSF to operate Corwith. (A Compl. Par. 17-19, 26-27). Therefore, the motion to exclude

is denied as moot.

## CONCLUSION

Based on the foregoing analysis, the motions to dismiss are granted and the motion to exclude is denied as moot.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: November 3, 2011